UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CRIMINAL ACTION NO. 3:16-cr-00070-JHM

UNITED STATES OF AMERICA                                              PLAINTIFF

V.

ROBERT J. VANCE                                                       DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Suppress [DN 15] and Motion in Limine [DN 16]. Fully briefed, these matters are ripe for decision. For the following reasons, both of Defendant's Motions are **DENIED**.

### I. BACKGROUND

On December 17, 2015, Detective Ryan Whitford and Officer Patrick Lawrence were patrolling the high crime neighborhood of Portland in Louisville, Kentucky. While traveling down 29th Street, they observed an unattended van at the corner of 29th Street and Alford Avenue with its passenger door open. Across the street, they saw a tan 2002 Toyota Sequoia with the driver door ajar and an individual standing on the sidewalk outside the door. As they passed, the man next to the Toyota, later identified as Defendant Vance, gave them a "deer-in-the-headlights" look. Because vehicle thefts are common in this area and because the two officers believed he may have been breaking into vehicles, they decided to investigate further. The officers returned to where Vance was standing, and Lawrence attempted to engage Vance in conversation. At this time, Vance turned and ran down 29th Street into an alley. Lawrence pursued him on foot, and Vance tripped over a black object in the alleyway and fell.

Lawrence secured Vance while Whitford further investigated the scene. Whitford observed that on the ground several feet from Vance lay a Chicago Bulls cap and a green Crown

Royal bag with yellow seams. Whitford found that the green bag contained a Glock Model 21 .45 caliber pistol and a very large "rock" of crystal methamphetamine, which reportedly weighed 111.1 grams. However, no field test of this substance was conducted. Vance repeatedly denied that this bag belonged to him. He did, however, claim the Chicago Bulls hat.

On Vance's neck was a chain with keys attached, one of which was a key that matched the 2002 Toyota Sequoia. Lawrence and Whitford arrested Vance and went back to Vance's Toyota, which was 50 to 60 feet away from the scene of arrest. There, a holster could be seen from outside of the vehicle. The door of the Toyota remained open after Vance was in custody, and the officers searched the vehicle. From the search, they discovered the holster that contained extra ammunition for a .45 caliber Glock—the same type of weapon located in the green bag—and drug paraphernalia.

The owner of the van across the street confirmed that Vance was not breaking into his vehicle, but his vehicle's door was open because he was moving personal effects into his apartment. Lawrence and Whitford then transported Vance to the police station. The officers processed the evidence and completed the necessary attendant paperwork. The firearm, ammunition, and methamphetamine were entered into evidence. The substance recovered from the scene was later tested by the Kentucky State Police laboratory and the DEA laboratory in Chicago. Both tests concluded that the substance in question was indeed methamphetamine.

## II. DISCUSSION

Now before the Court is Vance's Motion to Suppress Evidence [DN 15], arguing police conducted an unlawful search and seizure, and Vance's Motion in Limine [DN 16], contending that gaps in the chain of custody of certain evidence render it inadmissible. The Court will address each Motion in turn.

**A. Motion to Suppress**

First, Vance claims that any evidence obtained directly or indirectly was the result of an illegal stop, arrest, and subsequent search and seizure of his vehicle. Vance states that the stop of his person was warrantless, not consensual, and not made with probable cause to believe or a valid reason to suspect that Vance had been, was, or was about to be engaged in criminal activity. Therefore, he argues that all fruits of this illegal stop, arrest, and search must be suppressed.

The Fourth Amendment, which applies to the states through incorporation by the Fourteenth Amendment, protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Ingram v. City of Columbus, 185 F.3d 579, 586 (6th Cir. 1999) (quoting U.S. Const. amend. IV); see Mapp v. Ohio, 367 U.S. 643, 654–57 (1961). This case requires the Court to determine whether, at that time Vance was seized, the officers had reasonable suspicion that he was engaging in criminal activity sufficient to justify an investigatory stop.

A person is seized when an officer "by means of physical force or show of authority, has in some way restrained [his] liberty," Terry v. Ohio, 392 U.S. 1, 19 n. 16 (1968), such that "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave," Michigan v. Chesternut, 486 U.S. 567, 573 (1988). See United States v. Johnson, 620 F.3d 685, 690 (6th Cir. 2010). "A suspect is seized 'within the meaning of the Fourth Amendment where an officer applies physical force to restrain [the] suspect or a show of authority . . . has in some way restrained the liberty of [the] citizen.'" United States v. Ray, 597 F. App'x 832, 837 (6th Cir. 2015) (quoting United States v. Jeter, 721 F.3d 746, 751–52 (6th Cir. 2013); Terry, 392 U.S. at 19 n. 16). If physical force or submission

to the assertion of authority is absent, no seizure occurs. Id. (citing California v. Hodari D., 499 U.S. 621, 626 (1991)). A seizure requires "a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful. . . . [The Fourth Amendment] does not remotely apply, however, to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee. That is no seizure." Hodari, 499 U.S. at 626; United States v. Logan, 526 F. App'x 498, 501 (6th Cir. 2013). It is, at most, an attempted one. Brendlin v. California, 551 U.S. 249, 254 (2007).

In this case, although the patrol cars converging on Vance and Officer Lawrence speaking to Vance[1] was certainly a show of authority on the part of the officers that could potentially amount to a seizure, Vance was not seized from the outset of the encounter because he did not submit to the show of authority. Instead, Vance immediately began to run on foot away from the stopped patrol car and the officers. See Logan, 526 F. App'x at 501. "[A]n individual must actually yield to the show of authority to be seized within the meaning of the Fourth Amendment." Johnson, 620 F.3d at 690. As explained the Supreme Court in Brendlin, "one sitting in a chair may submit to authority by not getting up to run away." Logan, 526 F. App'x at 501. Here, Vance did not remain near the car, and his decision to abruptly run away from the vehicle is a sign of resistance to the show of authority. Vance was therefore not seized at that time. Id. Vance was only seized after he tripped on the ground and Officer Lawrence restrained him in the alleyway.

---

[1] Officer Lawrence yelling "Hey!" at Vance likely would not be enough to constitute a seizure at this moment in time. Had Officer Lawrence yelled "Stop!" or ordered Vance to stop and stay where he was, a reasonable person in Vance's position would not have felt free to leave. See Johnson, 620 F.3d at 690–91. Therefore, that type of interaction would have triggered the Fourth Amendment, as Vance would have been seized at that moment. Because, here, Officer Lawrence did not order Vance to stop, a reasonable person in Vance's position would have felt free to leave or carry on his business, meaning Vance was not yet seized.

4

Accordingly, because Vance was not seized until he was apprehended by Officer Lawrence, any evidence that he discarded during his flight was not the fruit of an unlawful seizure under the Fourth Amendment. The Supreme Court has noted that during flight, any items "abandoned" by the defendant are not the fruit of a seizure. Hodari, 499 U.S. at 626; see United States v. Phillips, No. 16-1758, 2017 WL 700223, at *2 (6th Cir. Feb. 22, 2017) (finding defendant was not seized when he ran before he was confronted by police and search reasonable because defendant had no reasonable expectation of privacy in the gun he dropped in a public street as he ran from police); United States v. Swindle, 407 F.3d 562, 572–73 (2d Cir. 2005) (finding "cocaine was 'not the fruit of a Fourth Amendment seizure' because the suspect discarded the drugs before he had been physically apprehended or submitted to police authority"). Therefore, the Court will not suppress the handgun and methamphetamine found next to Vance after his fall as the product of an unlawful seizure, as Vance was not seized at the time these items were discarded.

Having concluded that Vance was seized only when Officer Lawrence secured him in the alleyway, the Court must next consider whether the seizure was lawful at that time. A police officer may initiate an investigatory stop short of probable cause to arrest. United States v. Atchley, 474 F.3d 840, 848 (6th Cir. 2007). A brief investigatory stop is justified under the Fourth Amendment where "a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." Terry v. Ohio, 392 U.S. 1, 30 (1968); see also O'Malley v. City of Flint, 652 F.3d 662, 670 (6th Cir. 2011). "The officer must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." United States v. Gross, 662 F.3d 393, 399 (6th Cir. 2011). In evaluating whether the officers had a reasonable suspicion, the Court must consider the

totality of the facts and circumstances of which the officers were aware, including the contextual factor of the area's crime level. United States v. Davis, 514 F.3d 596, 608 (6th Cir. 2008). "Additionally, the experience of the law enforcement officer must be taken into account in the reasonable suspicion analysis[.]" United States v. McCauley, 548 F.3d 440, 445 (6th Cir. 2008). The court may consider all events up until the point of seizure. See Johnson, 620 F.3d at 696.

To start, the Court will address the "contextual considerations." Wardlow, 528 U.S. at 124. Although these factors may not, without more, give rise to reasonable suspicion, they are relevant to the reasonable suspicion calculus. Id. These factors can include the high-crime location, the late hour of the evening, the experience of the officers involved, among others. United States v. Caruthers, 458 F.3d 459, 467 (6th Cir. 2006); Logan, 526 F. App'x at 503. In this case, the Court will consider many pertinent contextual factors. First, the neighborhood of Portland is a high-crime area of Louisville, known for narcotics trafficking, gun violence, and breaking and entering of vehicles. Logan, 526 F. App'x at 503; see Johnson, 620 F.3d at 693; Davis, 514 F.3d at 608. Second, officers observed Vance at approximately 11:40 PM, a late and dark hour, especially on a night like December 17, 2015. See Caruthers, 458 F.3d at 467. Third, the officers believed, based on their experience, that Vance may have been breaking into a vehicle because of the presence of the van across the street with its door ajar, the placement of Vance and Vance's car in relation, and the high volume of breaking and entering crimes and vehicular theft in the area. Logan, 526 F. App'x at 503. Thus, the contextual considerations in this case support the stop.

Most importantly in the analysis, though, is the fact that Vance, upon seeing a patrol vehicle and hearing Officer Lawrence address him, took off running on foot immediately. "Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily

indicative of wrongdoing, but it is certainly suggestive of such." Illinois v. Wardlow, 528 U.S. 119, 124 (2000). If an officer, without reasonable suspicion or probable cause, approaches an individual, the individual has a right to ignore the police and go about his business. Florida v. Royer, 460 U.S. 491, 498 (1983). And any "refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure." Florida v. Bostick, 501 U.S. 429, 437 (1991). But, unprovoked flight is simply not a mere refusal to cooperate. Flight, by its very nature, is not "going about one's business"; in fact, it is just the opposite. Allowing officers confronted with such flight to stop the fugitive and investigate further is quite consistent with the individual's right to go about his business or to stay put and remain silent in the face of police questioning. Wardlow, 528 U.S. at 125. In the event that a suspect flees upon noticing police, the stop is supported by reasonable suspicion. Id. at 126. Following Wardlow, the Sixth Circuit "held that 'the speed of the suspect's movements' to get away 'may be relevant to the totality of the circumstances' for reasonable suspicion, [United States v. Caruthers, 458 F.3d 459, 466 (6th Cir. 2006), and the Sixth Circuit has] considered the abruptness and other evasive characteristics of a suspect's departure upon noticing the police to determine whether his reaction contributes to reasonable suspicion." Johnson, 620 F.3d at 694; see United States v. Davis, 331 Fed. App'x 356, 358, 360 (6th Cir. 2009) (finding reasonable suspicion when a defendant who emerged from a known drug house "had a deer-in-the-headlights kind of look and proceeded to pick up the pace" to cross the street upon seeing two officers on patrol); United States v. Fisher, 229 F.3d 1154, 2000 WL 1234327, at *2–3 (6th Cir. 2000) (finding reasonable suspicion where the defendant turned away from police, feigned entry into an apartment, and upon confrontation, fled from police on foot).

Here, considering the totality of the circumstances, Officer Lawrence and Detective Whitford had reasonable suspicion in order to support the investigatory stop. "Along the burden-of-proof spectrum, this Court understands reasonable suspicion as 'satisfied by a likelihood of criminal activity less than probable cause' and 'considerably short of satisfying a preponderance of the evidence standard.'" Davis, 331 F. App'x at 359 (quoting United States v. Campbell, 549 F.3d 364, 370–71 (6th Cir. 2008)). In Wardlow, the Supreme Court dealt with this issue head-on, ruling that a defendant's evasive and unprovoked flight, along with his presence in a high-crime area, aroused sufficient, reasonable suspicion to lawfully stop the individual and conduct a pat-down. 528 U.S. at 124. The same elements are present here—strong contextual considerations coupled with unprovoked headlong flight. As such, the Court finds that Officer Lawrence and Detective Whitford had sufficient reasonable suspicion to properly warrant an investigatory stop Defendant Vance. See Phillips, 2017 WL 700223, at *2 (denying suppression when defendant ran before confronted by police). Accordingly, the Court rejects Vance's argument to suppress on the ground that the officers lacked reasonable suspicion.

Because the officers here did not conduct an unlawful search and seizure, any fruits of the subsequent searches should not be suppressed. Regardless, the law is well-established that an officer may conduct a full search of an arrestee's person during the course of a lawful arrest. United States v. Robinson, 414 U.S. 218, 234–35 (1973); United States v. Montgomery, 377 F.3d 582, 586 (6th Cir. 2004) (explaining that "[u]nder the 'search-incident-to-a-lawful-arrest' exception to the warrant requirement, a law enforcement officer may conduct a full search of an arrestee's person incident to a lawful custodial arrest"). Even more, an officer may search a vehicle incident to the lawful custodial arrest of a recent occupant of that vehicle. See, e.g., Thornton v. United States, 541 U.S. 615, 623–24 (2004) (holding that "[s]o long as an arrestee is

[a] . . . 'recent occupant' of a vehicle . . . officers may search that vehicle incident to the arrest"); United States v. Marco, 252 F. App'x 70, 74 (6th Cir. 2007). Even when the officer does not make contact with the individual until the person arrested has already left the vehicle, the Fourth Amendment allows the officer to search the vehicle as a contemporaneous incident of arrest. Thornton, 541 U.S. at 623. However, police may search the recently occupied vehicle following the occupant's arrest, "only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." Arizona v. Gant, 556 U.S. 332, 351 (2009).

Here, the Court is satisfied that Officer Lawrence and Detective Whitford were reasonable in believing that the vehicle contained evidence of the offense of arrest. Officers found a firearm and methamphetamine next to Vance after he fell in the alley. Vance was arrested for the possession of a firearm and for the possession of methamphetamine. Officers were reasonable in their determination that further evidence of these offenses might be contained within the vehicle. See United States v. Stapleton, No. 12-11-ART-(1), 2013 WL 3935104, at *3 (E.D. Ky. July 30, 2013) (finding a search reasonable when defendant arrested for driving under the influence of pills and alcohol because the search might uncover more pills or alcohol containers). Even more convincingly, the officers observed a clearly visible holster in the front seat of the Toyota prior to commencing a search of the vehicle. Seeing the holster certainly bolsters the reasonableness of the search, as the officers did not need to reasonably believe that the vehicle contained more evidence of the offense of arrest, they could plainly see the existence of more evidence of the offense before commencing the search.

Alternatively, the evidence uncovered from the search of the vehicle should not be suppressed on three separate grounds. First, "[i]t is well established that law enforcement agents

may seize items in plain view, so long as the agent is lawfully present, the discovery is inadvertent, and the incriminating nature of the item is 'immediately apparent.'" United States v. Blair, 214 F.3d 690, 698 (6th Cir. 2000) (quoting United States v. Blakeney, 942 F.2d 1001, 1028 (6th Cir. 1991)). "The standard does not demand an 'unduly high degree of certainty;' rather, a plain view seizure is 'presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity.'" United States v. Calloway, 116 F.3d 1129, 1133 (6th Cir. 1997) (quoting Texas v. Brown, 460 U.S. 730, 741–42 (1983)). The Sixth Circuit has specifically held in Pearce that once an observe[s] a gun magazine lying in plain view in the vehicle, the officers had sufficient justification to search the vehicle for weapons." United States v. Pearce, 531 F.3d 374, 384 (6th Cir. 2008); see United States v. Burnett, 791 F.2d 64, 67 (6th Cir. 1986) (holding that once contraband was found in plain view, an officer has probable cause to search the entire car). Similarly, Lawrence and Whitford observed the gun holster with an extra clip in it sitting on the front seat of the vehicle, so, just as in Pearce, the officers were justified in seizing the holster in plain view and searching the car.

Second, the officers here had another independent source of probable cause to search the vehicle. "Pursuant to the automobile exception to the warrant requirement, an officer may search a readily mobile vehicle without a warrant if he has probable cause to believe that the vehicle contains evidence of a crime." Smith v. Thornburg, 136 F.3d 1070, 1074 (6th Cir. 1998) (citing California v. Carney, 471 U.S. 386, 390–94 (1985); United States v. Wright, 16 F.3d 1429, 1437 (6th Cir. 1994)). Probable cause is defined as a "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." United States v. Bennett, 905 F.2d 931, 934 (6th Cir.1990). Probable cause exists when there is a "'fair probability that contraband or evidence of a crime will be found in a particular place.'" Wright, 16 F.3d at 1437 (quoting

Illinois v. Gates, 462 U.S. 213, 238 (1983)). Determining whether probable cause existed at the time of the search is a "'commonsense, practical question' to be judged from the 'totality-of-the-circumstances.'" Id. (quoting Gates, 462 U.S. at 230). Specifically, once contraband is found due to an investigatory stop, an officer has probable cause to believe that other contraband might be in the car. See United States v. Burns, 298 F.3d 523, 542 (6th Cir. 2002) (finding the search of the entire vehicle not unlawful once contraband was found on one of the passengers); see also United States v. McGhee, 672 F. Supp. 2d 804, 813 (S.D. Ohio 2009) (finding probable cause when marijuana was see in plain view and defendant had a large amount of cash on his person). In this case, officers found a firearm and methamphetamine in the alleyway next to Vance as a result of the investigatory stop.[2] Because contraband was found near his person (presumably dropped during the flight or fall), and was reasonably determined to be Vance's because of the temporal and spatial proximity to his person, sufficient probable cause was established so as to support the search of the vehicle.

Third, under the inevitable discovery rule, even if the fruits of the earlier search were the fruits of an illegal stop, they would be admissible if the government proves they would have been acquired through lawful means. See Nix v. Williams, 467 U.S. 431, 448 (1984); United States v. Robinson, 390 F.3d 853, 871 (6th Cir. 2004). This discovery typically results from an inventory search. Inventory searches "serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard

---

[2] Vance attempts to make an argument that because no field test was conducted on the methamphetamine found at the scene, this substance cannot give rise to any finding of probable cause. However, "[n]either the Supreme Court nor Sixth Circuit Court of Appeals has ever held that a field test is required to establish probable cause that a substance is illicit. Indeed, at least two other Circuits have explicitly rejected such an assertion." Swales v. Twp. of Ravenna, 989 F. Supp. 925, 939 (N.D. Ohio 1997) (citing United States v. Cook, 949 F.2d 289, 292 (10th Cir. 1991) (holding that "substantial grounds existed for believing that cocaine could be found ... [a]lthough [an officer] did not conduct a field test on the substance"); United States v. Prandy–Binett, 995 F.2d 1069, 1073 (D.C. Cir. 1993) (noting that it "did not share the [district] court's concern" that "without further investigation (presumably a field test), the officers could not know the specific nature of a defendant's alleged crime")).

11

the police from danger." Colorado v. Bertine, 479 U.S. 367, 372 (1987). An inventory search may not be conducted for purposes of investigation and must be conducted according to standard police procedures. Florida v. Wells, 495 U.S. 1, 5 (1990); United States v. Lumpkin, 159 F.3d 983, 987 (6th Cir. 1998). Here, because the officers arrested Vance after discovering that he was carrying a firearm and a large rock of methamphetamine, it was inevitable that the Toyota Sequoia would have been seized. As such, it was inevitable that the Toyota would have been searched and that the ammunition and drug paraphernalia would have been found during the course of an inventory search. United States v. Dyer, 178 F.3d 1297, 1999 WL 115495, at *3 (6th Cir. 1999) (unpublished table decision); see Robinson, 390 F.3d at 871.

Therefore, the Court is satisfied that the subsequent search of the vehicle did not violate Vance's Fourth Amendment rights and evidence recovered from such search should not be suppressed.

In conclusion, as discussed above, each of Vance's arguments in support of suppression fail. Accordingly, the Court will deny Vance's Motion to Suppress in its entirety.

**B. Motion in Limine**

Vance filed his Motion in Limine seeking to exclude the methamphetamine from evidence. Vance claims that the gaps in the chain of custody of the methamphetamine evidence render this evidence inadmissible as a matter of law.

The United States argues that there are no chain of custody issues here. The United States asserts that on December 17, 2015, Officer Lawrence and Detective Whitford filled out the necessary paperwork and processed the recovered methamphetamine at the Louisville Metro Police Department (hereinafter "LMPD") station. Whitford placed the exhibit marked "2 Bags meth – 111.1 GM TTL WT" into the LMPD's property room. The assigned property

identification number was 4770588. On January 7, 2016 Detective Austin Boone and Detective John Leonard took an evidence bag marked 4770588 to the Kentucky State Police lab for testing. On March 21, 2016, Kentucky State Police conducted a forensic examination and found this evidence to contain 96.803 grams of methamphetamine. On March 30, 2016, Kentucky State Police returned the evidence to the LMPD. On April 11, 2016, Detective Mark Brown of the ATF took custody of the evidence and shipped the evidence to the DEA on April 15, 2016 to have it tested in more detail. On February 2, 2017, the DEA tested the material and found that it contained 95% (+ or – 4%) pure methamphetamine hydrochloride. The DEA later returned the evidence to the ATF Louisville Resident Office and Detective Brown received them. On February 16, 2017, Detective Brown returned the evidence to the LMPD property room.

    Vance takes issue with these facts and contends that the material found at the scene on December 17, 2015 is not the same as the material sent to the Kentucky State Police and DEA laboratories for testing. First, he argues that the substance seized several feet away from him on the night of December 17, 2015 was placed into a sealed evidence container along with the green Crown Royal bag in which it was found. Vance argues that this substance cannot be the same as the substance later checked into the evidence locker and sent for testing because the evidence container housing the material did not contain a Crown Royal bag. Second, Vance asserts that there is conflicting testimony as to who actually checked the material into the evidence room, calling into question the custody of the material and whether the material seized was the same as that placed into evidence. Third, the weight of the material seized allegedly was 111.1 grams at the scene, but the material analyzed by the laboratories only weighed 96.803 grams, and the material that was returned from the lab weighed 105.2 grams (+ or – 0.2 grams). Fourth, the government stated in its response that Lawrence released an evidence bag to the Kentucky State

13

Police for testing, but Lawrence testified he had not done so. Lastly, the DEA laboratory receipt acknowledging receipt of the material sent by Brown is unsigned, and, as Vance claims, is unauthenticated. Vance contends that these discrepancies go to show that the material seized at the scene was not the same as the material ultimately put into evidence, tested, and now used as evidence against Vance.

As to the chain of custody issue, most "challenges go to the weight of the evidence, and do not affect admissibility." United States v. Hillman, 42 F.3d 1389 (6th Cir. 1994) (citing United States v. Levy, 904 F.2d 1026, 1030 (6th Cir. 1990)). Generally, "[w]here there is no evidence of tampering with the exhibits, "the presumption of regularity attends official acts of public officers and the courts presume that their official duties have been discharged properly." United States v. Robinson, 104 F.3d 361 (6th Cir. 1996) (quoting United States v. Aviles, 623 F.2d 1192, 1198 (7th Cir. 1980)). "[T]he government need not exclude all possibilities of tampering with evidence in order to establish a sufficient chain of custody." Aviles, 623 F.2d at 1198 (citing United States v. Bridges, 499 F.2d 179, 185 (7th Cir.), cert. denied, 419 U.S. 1010 (1974)); see United States v. Crite, 9 F.3d 110, 1993 WL 445084, at *5 (6th Cir. 1993) (unpublished table decision). In fact, "[t]he government need only show that it took reasonable precautions to preserve the original condition of the evidence." Aviles, 623 F.2d at 1198 (citing United States v. Santiago, 534 F.2d 768, 769 (7th Cir. 1976)). In the end, "[i]f the trial judge is satisfied that in reasonable probability the evidence has not been altered in any material respect, he may permit its introduction." Id.

Though Vance has asserted many potential discrepancies within the chain of custody, his arguments go to the weight of the evidence rather than to the admissibility. The government has put forth evidence to show that it took reasonable precautions and care to preserve the original

14

material and to ensure that the evidence collected was appropriately labeled and tracked.  Vance has not shown that the government engaged in any misconduct.  Despite Vance's articulated inconsistencies, the Court is satisfied that the chain of custody for the evidence was substantially complete.  Therefore, the Court concludes, taking into account the lack of evidence of any government wrongdoing along with the presumption that the government's agents correctly performed their duties, that the methamphetamine evidence is admissible.  As such, it is for the jury to consider the weight of the methamphetamine evidence in light of these discrepancies and it is for the jury to decide whether they believe the Vance or the government. "This matter of credibility is for the jury, not [this] [C]ourt."  Crite, 9 F.3d 110, at *7; Levy, 904 F.2d at 1030.

### III. Conclusion

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendant's Motion to Suppress [DN 15] is **DENIED**.  **IT IS FURTHER ORDERED** that Defendant's Motion in Limine [DN 16] is **DENIED**.

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

June 6, 2017

cc: counsel of record